# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-3540

_____

Tammy Moore, on behalf of    *
Breanna Moore,    *
   *
       Plaintiff-Appellant,    *      Appeal from the United States
   *      District Court for the
     v.    *      Eastern District of Arkansas.
   *
Jo Anne B. Barnhart,    *          [PUBLISHED]
   *
       Defendant-Appellee.    *

_____

Submitted: May 13, 2005
Filed: July 5, 2005

_____

Before LOKEN, Chief Judge, HANSEN and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Tammy Moore, on behalf of her daughter, Breanna Moore, appeals from the district court's judgment affirming the Commissioner of Social Security's denial of Moore's claim for supplemental security income, 42 U.S.C. §§ 1381-1383f (2000). After careful review, we affirm.

I.

Thirteen-year-old Breanna Moore has been diagnosed as mentally retarded. She is enrolled in a regular public elementary school, where she attends resource classes for reading, math, and language arts, and remains in a regular classroom for social studies and science, with some modified course work. Although Breanna has generally received low scores on her academic skills tests, she receives grades in the 80s and 90s in most of her classes. On an IQ test in April 2001 Breanna achieved a verbal score of 70, a performance score of 58, and a full scale score of 61.[1] (Admin. Tr. at 100.)

Her mother applied for supplemental security income on Breanna's behalf on March 27, 2001. Applying the standard three-step analysis for determining childhood disability, see 20 C.F.R. § 416.924 (2004), the ALJ first determined that Breanna had not engaged in substantial gainful activity. Next, he determined that Breanna Moore's impairment–mild mental retardation–was "severe" for social security purposes. Ultimately the ALJ determined that Breanna's impairments were not medically or functionally equivalent to any of the mental impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1, listing 112.05. (Admin. Tr. at 11.) As to medical equivalency, the ALJ stated that he had specifically considered listing 112.05C, but the ALJ never explicitly addressed the application of listing 112.05E. As to functional equivalency, the ALJ found no evidence in the record that Breanna had limitations in five of the six functional domains listed in the regulations. See 20 C.F.R. § 416.926a(b)(1) (2004). While the ALJ did find that Breanna experienced a "marked" limitation in one of the domains, "acquiring and using information," ultimately the ALJ found that

---

[1]On an IQ test in 1998, Breanna received a verbal score of 57, a performance score of 60, and a full scale score of 55. However, according to the regulations, "IQ test results must . . . be sufficiently current for accurate assessment under [the applicable federal regulation, Listing] 112.05." See 20 C.F.R. pt. 404, subpt. P, app. 1, 112.00D(10). When the ALJ rendered his decision in 2003, the 2001 scores were the most current because "IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above." Id.

Breanna did not have a marked limitation in two or more domains, and that she had no "extreme" limitations. (Admin. Tr. at 14.) Benefits were denied initially and on reconsideration, and the Appeals Council denied review. The ALJ's determination stands as the Commissioner's final decision. See Dixon v. Barnhart, 353 F.3d 602, 604 (8th Cir. 2003).

Moore appealed to the United States District Court, and the experienced United States Magistrate Judge[2] found that substantial evidence supported the Commissioner's decision to deny benefits. The judge rejected Moore's contention that Breanna's impairments were medically equivalent to Listings 112.05D or 112.05E. The court also rejected Moore's assertion that Breanna's impairments were functionally equivalent to any impairment in listing 112.05 because Breanna's limitation in the regulatory domain of "acquiring and using information" was allegedly "extreme." See 20 C.F.R. § 416.926a(b)(1). The court held that substantial evidence in the record as a whole supported the Commissioner's conclusion that Breanna had a marked, but not an extreme, limitation in the domain of "acquiring and using information," and rejected Moore's contention that Breanna had a marked limitation in either the domain of "moving about and manipulating objects" or "attending and completing tasks."

Appealing the district court's judgment, Moore argues before this court that the Commissioner erred in determining that Breanna's impairments were not medically or functionally equivalent to those listed in 20 C.F.R. pt. 404, subpt. P, app. 1, listings 112.05C or E. However, because Moore did not argue before the district court that the ALJ erred in determining that Breanna's impairments did not meet the requirements of listing 112.05C, Moore may not raise this argument for the first time

---

[2]The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c) (2000).

on appeal. See Dixon, 353 F.3d at 606. In addition, we note that although Moore made a medical equivalency argument based on listing 112.05D in the district court, before this court Moore does not dispute the district court's decision as it related to that particular listing. Thus the only medical equivalency argument that remains is based on listing 112.05E.

## II.

We review de novo a district court decision affirming a denial of social security benefits. Ellis v. Barnhart, 392 F.3d 988, 993 (8th Cir. 2005). We will affirm the decision of the Commissioner if the Commissioner's findings are supported by substantial evidence on the record as a whole. Id. Substantial evidence is relevant evidence that a reasonable mind might find adequate to support the Commissioner's decision. Id. "We consider the whole record, including evidence that detracts from as well as evidence that supports the Commissioner's decision, and we will not reverse as long as substantial evidence supports the outcome." Id.

The Social Security Administration applies a three-step sequential test to determine childhood disability. Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 854 (8th Cir. 2003); 20 C.F.R. § 416.924. At the first step, the Administration determines whether the child is engaged in substantial gainful activity. See 20 C.F.R. § 416.924(b). At the second step, an ALJ determines whether the child has an impairment that is "severe." 20 C.F.R. § 416.924(c). At the third step, an ALJ determines whether the child's impairment is medically or functionally equivalent in severity to the impairments listed in the disability regulations. 20 C.F.R. § 416.924(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Because Moore only disputes the district court's findings as to the medical and functional equivalency of Breanna Moore's impairment, we address only the third step of the analysis. See Scales v. Barnhart, 363 F.3d 699, 703 (8th Cir. 2004).

Moore first contends that substantial evidence does not support the Commissioner's determination that Breanna Moore's impairments were not medically equivalent to the impairments in listing 112.05E.[3] The Social Security Administration evaluates medical equivalency pursuant to 20 C.F.R. § 416.926 and 20 C.F.R. pt. 404, subpt. P, app. 1. Medical equivalency exists if the child's impairment "is at least equal in severity and duration to the medical criteria of the listed impairment." Neal ex rel. Walker v. Barnhart, 405 F.3d 685, 689 (8th Cir. 2005). In order to meet the requirements of listing 112.05E for mental retardation, the applicant must demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70" and "at least one of paragraphs B2b or B2c or B2d of 112.02." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 112.05E (2). Moore argues that Breanna meets both prongs of 112.05E – that Breanna had two IQ scores between 60 and 70, as required by Listing 112.05E(1), and marked difficulties in concentration, persistence, and pace, as required by listings 112.05E(2) and 112.02B(2)(d). In support of her argument that Breanna has difficulties in concentration, persistence, or pace, Tammy Moore argues that in 1998 a psychologist noted that Breanna had difficulty with tasks requiring "sustained attention" and "concentration" and that Breanna sometimes lost motivation in school. (Admin Tr. at 186, 188.)

The regulations provide that difficulties in "concentration, persistence, or pace" are shown by "deficiencies resulting in failure to complete tasks in a timely manner." See 20 C.F.R. pt. 404, subpt. P, app. 1, listing 112.00C(3) and (4)(b). The regulations also explain that the Social Security Administration evaluates applicants for difficulties in concentration, persistence, or pace "[in order] to identify the child who cannot adequately function in primary school because of a mental impairment." Listing 112.00C(3). In this case, despite the one report of difficulty with sustained

---

[3]The fact that the ALJ's decision does not specifically mention listing 112.05E does not affect our review. "Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion, as it does in this case." Pepper, 342 F.3d at 855.

attention in 1998, the record clearly supports a conclusion that Breanna had no marked difficulties in concentration, persistence, or pace. First, in May 2001 her teachers and her school counselor filled out a questionnaire for the Social Security Administration which contained a section specifically pertaining to "Concentration, Persistence, and Pace." (Admin. Tr. at 81.) The school officials indicated that Breanna had "no significant problems" concentrating on class work, working independently, staying on task, concentrating on tasks of interest to her, or completing tasks on time. Second, Tammy Moore provided evidence that Breanna did not have difficulties in these areas. In April 2001 Tammy Moore completed a Social Security Administration Function Report which asked the question,"Is the child's ability to pay attention and stick with a task limited?" (Id. at 143.) In response she indicated that Breanna was able to stay busy on her own, finish tasks that she had started, complete homework and household chores. (Id.) Furthermore, Tammy Moore testified before the ALJ that Breanna is able to read at home and complete her homework. (Id. at 36-41.) Finally, Breanna's grades for the 2001-2002 school year were nearly all in the 90s, except for some 70s in social studies. (Id. at 177-78.) We conclude that even though an earlier psychological evaluation suggested that Breanna had some level of difficulty with tasks requiring sustained attention, the other evidence in the record suggests that Breanna is not "[a] child who cannot adequately function in primary school because of a mental impairment," Listing 112.00C(3), and thus substantial evidence supports the Commissioner's conclusion that Breanna's impairment is not medically equivalent to listing 112.05E.

Moore next asserts that substantial evidence does not support a conclusion that Breanna's impairments were not <u>functionally</u> equivalent to those in the listing. The Administration evaluates functional equivalency pursuant to 20 C.F.R. § 416.926a. Functional equivalency to a listed impairment exists if a child has an "extreme"

limitation in at least one of the six functional domains listed in § 416.926a(b)(1)[4] or a "marked" limitation in a least two of the domains. <u>Neal</u>, 405 F.3d at 689; 20 C.F.R. § 416.926a. Moore first posits that Breanna's impairments meet the functional equivalency requirements because of an "extreme" impairment in her ability to "acquire and use information. " Moore insists that this limitation is clearly "extreme" because Breanna's full scale IQ score of 55 in 1998 is three standard deviations below the mean, a range that meets the Commissioner's definition of extreme.

Section 416.926a(e)(3)(iii) states,

> If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

After careful review, we respectfully disagree with Tammy Moore's assessment. First, although the Commissioner does not explicitly dispute Breanna's IQ scores, we do not find that her most current IQ scores, which the regulations require the Commissioner to consider, are in fact three standard deviations below the mean. The regulations provide that the mean is 100 and the standard deviation is 15. Listing 112.00D(9). While a valid IQ score of 55 would be exactly three standard deviations below the mean, Breanna's lowest <u>current</u> IQ score is a performance score of 58. Second, as the Commissioner points out, the regulations actually require more than an IQ score that is three standard deviations below the mean in order to classify an impairment as "extreme." <u>See</u> <u>Scales</u>, 363 F.3d at 704 ("Having one raw score at the

---

[4]The six domains of limitations are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

borderline of three standard deviations below the mean does not <u>require</u> a finding of an extreme limitation [under § 416.926a(3)(3)(iii)].").  The regulation also requires that the score result from "a comprehensive standardized test designed to measure ability or functioning in that domain,"–in this case, the domain of acquiring and using information–and that Breanna's day-to-day functioning in the domain-related activities be consistent with that score.  Moore does not indicate that any qualifying IQ score was on a test designed to measure capability in the domain of acquiring or using information.  Furthermore, she does not demonstrate that Breanna's day-to-day activities are consistent with a low IQ in this domain.  The evidence of Breanna's good grades in her classes suggests that, with adequate attention and assistance, Breanna <u>is</u> able to acquire and use new information in school.  Thus, the record as a whole supports the decision of the ALJ and the Commissioner that Breanna does not suffer from an extreme limitation in the domain of acquiring and using information.

Finally, after reviewing the applicable regulations, 20 C.F.R. §§ 416.926a(h) (attending and completing tasks), (h)(2)(v) (age group descriptors) and (h)(3) (examples of limited function in attending and completing tasks); §§ 416.926a(j) (moving about and manipulating objects), (j)(2)(v) (age group descriptors) and (j)(3)(examples of limited functioning in moving about and manipulating objects), we conclude that substantial evidence supports a finding that Breanna did not suffer from additional "marked" impairments in the domains of "attending and completing tasks" and "moving about and manipulating objects."  The same evidence that suggests that Breanna had no marked difficulties in concentration, persistence, and pace also supports a conclusion that she did not have a marked impairment in the area of attending and completing tasks.  In addition, any indication that Breanna had "poor pencil grip" fails to establish that Breanna had a marked impairment in the area of moving and manipulating objects.  We also note that when the ALJ asked whether Breanna had any difficulties other than her learning impairments, Tammy Moore told the ALJ that Breanna had no other difficulties that were any different from those common among children her age.  (Admin. Tr. at 40-41.)

For the reasons stated above, we affirm the judgment of the district court affirming the Commissioner's decision to deny benefits.

_____