# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2496

_____

Michael Brock,                                         *
                                                       *
    Plaintiff - Appellant,                             *
                                                       *  Appeal from the United States
    v.                                                 *  District Court for the
                                                       *  Eastern District of Arkansas.
Michael J. Astrue, Social Security                     *
Commissioner,                                          *
                                                       *
    Defendant - Appellee.                              *

_____

Submitted: January 10, 2012
Filed:  March 28, 2012

_____

Before RILEY, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Michael Brock appeals the district court's order affirming the Commissioner's denial of his application for supplemental security income benefits. Specifically, he objects to the administrative law judge's finding, without considering the testimony of a vocational expert, that Brock was able to engage in gainful activity. We reverse and instruct the district court to remand the case for further proceedings.

Brock applied for supplemental security income on March 6, 2007. The Commissioner denied benefits upon initial review of his application and again on

reconsideration. Brock then requested a hearing before an ALJ, which was held on July 14, 2009. At the time of his hearing, Brock was twenty-one years old, had an eighth-grade education, and had no transferable job skills or relevant work experience. The ALJ found that Brock had severe mental impairments of anxiety disorder and untreated attention deficit hyperactivity disorder. However, the ALJ determined that, despite the severe mental impairments, Brock was able to understand, remember, and carry out simple, unskilled work, and that he therefore had the residual functional capacity ("RFC") to perform the full range of medium work contemplated in the the Medical-Vocational Guidelines ("guidelines"). The guidelines contain three "grids" in 20 C.F.R. pt. 404, subpt. P, app. 2 that set out combinations of statutory criteria, and if a claimant fits one of those combinations, the grids will direct a finding of either "disabled" or "not disabled." Considering Brock's RFC, age, education, and work experience, the ALJ based his decision on Rule 203.25, which directed a finding that Brock was "not disabled." The ALJ issued his decision on November 18, 2009.

Brock appealed to the district court. Brock argued that the guideline grids are only intended to direct disability decisions for claimants with exertional limitations. Because his impairments were solely nonexertional, Brock argued the ALJ should not have relied solely on the guidelines and should have sought testimony from a vocational expert before determining whether he was disabled. The magistrate judge issued a memorandum opinion on May 31, 2011, finding that there was sufficient evidence in the record to support the determination that Brock was "not disabled" and affirming the Commissioner's decision.

We review de novo the district court's decision to uphold the Commissioner's denial of supplemental security income benefits. Ellis v. Barhart, 392 F.3d 988, 993 (8th Cir. 2005). We affirm a denial of benefits if the adjudicator applied the correct legal standards and there is substantial evidence in the record to support the decision. Collins v. Astrue, 648 F.3d 869, 871 (8th Cir. 2011). Substantial evidence is

evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008). We consider the record as a whole, including evidence that detracts from, as well as supports, the Commissioner's decision. Ellis, 392 F.3d at 993.

On appeal, Brock argues that the ALJ erred at step five of the familiar five step analysis outlined in 20 C.F.R. § 416.920(a)(4)(i)–(v).[1] In the first four steps, the ALJ found that Brock was not currently employed, had severe mental impairments that were not among those listed in the guidelines, and had no previous relevant work to return to. Thus, at step five, the Commissioner bore the burden of establishing that, given Brock's RFC, age, education, and work experience, there were a significant number of other jobs in the national economy that Brock could perform. See Ellis, 392 F.3d at 993.

Specifically, Brock argues that the ALJ erred in relying solely on the guidelines to determine that he could perform other jobs. Because Brock believes the ALJ improperly relied on the guidelines, he asserts that there is not substantial evidence in the record to demonstrate the Commissioner met his burden at step five. Brock contends that because the guidelines are premised only on exertional limitations, they are not meant to direct a conclusion of "disabled" or "not disabled" for individuals who suffer solely from nonexertional impairments. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(1); see also McCoy v. Schweiker, 683 F.2d 1138, 1148 (8th Cir. 1982) (en banc) ("RFC is defined wholly in terms of the physical ability to perform certain exertional tasks. If a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or

---

[1]The five-step analysis asks (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) wether the claimant can perform any other kind of work. King v. Astrue, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

not disabled without regard to other evidence, such as vocational testimony."), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000). Brock contends his case fits within the general rule that, "if the claimant suffers from nonexertional impairments that limit her ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert." Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993).

The Commissioner argues that this case meets an acknowledged exception to that general rule. Because the ALJ made a finding of fact that Brock's severe mental impairments did not limit his ability to perform the relevant range of work considered in the guidelines, the Commissioner argues the guidelines can be used exclusively.

> The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines. In other words, the ALJ may rely on the guidelines to direct a conclusion of either disabled or not disabled without resorting to vocational expert testimony if the ALJ determines that a claimant's nonexertional limitations do not significantly affect the claimant's RFC.

Reed, 988 F.2d at 816 (citation omitted); see also Ellis, 392 F.3d at 996. Thus, the Commissioner argues that the need for a vocational expert depends on the ALJ's factual determination that a claimant has a significantly diminished RFC, rather than the mere existence of nonexertional limitations. In Thompson v. Bowen, 850 F.2d 346 (8th Cir. 1988), we said that "an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Id. at 349–50. Thompson clarified that our case law should not be read to generally

preclude any use of the guidelines when a nonexertional limitation was present, even though some language from earlier cases might suggest that outcome. Id. at 349; see also Tucker v. Heckler, 776 F.2d 793, 795–96 (8th Cir. 1985).

While the language of cases like Tucker, Thompson, and Reed do lend support to the Commissioner's position, we have on two occasions distinguished these cases—where the extent of the nonexertional limitation depends on the credibility of subjective testimony about pain—from cases where the nonexertional limitation is caused by severe mental impairments. In Wheeler v. Sullivan, 888 F.2d 1233 (8th Cir. 1989), we explained that the effect of pain bears a stronger relationship to the claimant's exertional ability than the effect of severe mental impairments:

> Objective tests of physical ability, reflected in the Guidelines, may resolve the issue of whether the claimant is disabled by reason of pain. A claimant with a severe mental impairment, however, may be incapable of holding any job, even if the claimant's body is sound and his or her physical ability unimpaired by pain or any other limiting condition. As we read Thompson, it does not apply to claimants who, like Wheeler, have been found to have severe mental impairment, and we distinguish Thompson from the present case on that basis.

Id. at 1238–39.

We revisited Wheeler's distinction recently in King v. Astrue, 564 F.3d 978 (8th Cir. 2009). Although neither party in King addressed Wheeler, the panel majority found its distinction was binding precedent and ruled that an ALJ improperly relied exclusively on the Guidelines to determine a claimant with a severe mental impairment was "not disabled." Id. at 979. The court noted that it could "find no case in our circuit sanctioning the Commissioner's use of the [guidelines] at step five, as opposed to [vocational expert] testimony, in a case involving a severe mental nonexertional impairment." Id.; see also Vincent v. Apfel, 264 F.3d 767, 769 (8th

Cir. 2001) (noting that the court in <u>Wheeler</u> directed an ALJ to use vocational expert testimony to determine RFC "if claimant suffers from severe mental impairment").

A dissenting judge in <u>King</u> argued that <u>Wheeler</u> was not binding precedent, and that the rule in <u>Thompson</u> should apply even if the nonexertional impairment in question was a severe mental impairment. See <u>King</u>, 564 F.3d at 980–81 (Loken, J., dissenting). The Commissioner now urges the court to follow the <u>King</u> dissent and treat that case as an outlier from our other social security cases. However, "a panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc." <u>United States v. Wright</u>, 22 F.3d 787, 788 (8th Cir. 1994).

We are bound by the majority opinion in <u>King</u>. Thus, following the reasoning in <u>King</u> and <u>Wheeler</u>, we conclude that the ALJ erred by relying solely on the guidelines to determine Brock was "not disabled." Because the ALJ determined that Brock suffered from severe mental impairments, the ALJ should have consulted a vocational expert in determining whether Brock had the RFC to perform other jobs that exist in significant number in the national economy. See <u>Vincent</u>, 264 F.3d at 769 (noting that an ALJ must use vocational expert testimony to determine the RFC of a claimant who suffers from severe mental impairment); <u>cf.</u> <u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir. 1997) (holding an ALJ improperly applied guidelines to direct a conclusion of "not disabled" without consulting a vocational expert to assess claimant's RFC in relation to her borderline intellectual functioning).

Accordingly, we reverse the judgment of the district court and instruct the district court to remand the case to the Commissioner for further proceedings consistent with this opinion.

_____