Larry L. WILSON, Appellant,

v.

Louis SULLIVAN,* Secretary of the Department of Health and Human Services, Appellee.

No. 88–5468.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1989.

Decided Sept. 21, 1989.

* Louis W. Sullivan, M.D., succeeded Otis R. Bowen, M.D., as Secretary of Health and Human Services in March 1989. Pursuant to Fed.R. App.P. 43(c)(1), his name should be substituted as appellee in this suit.

Philip R. Reitan, Mankato, Minn., for appellant.

Donna L. Calvert, Chicago, Ill., for appellee.

Before LAY, Chief Judge, MARKEY,** Chief Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Larry Wilson appeals the district court's affirmance of the Secretary's denial of Social Security disability benefits. We re-verse and remand for determination of benefits.

## I. BACKGROUND

Wilson, formerly a truck driver and construction laborer, is a relatively young man with a seventh grade education and a history of alcoholism. Wilson's insured status for purposes of disability benefits ran out on December 31, 1978.

In November of 1977, Wilson was initially hospitalized and was diagnosed as suffering from a possible herniated disc. In early October of 1978, Wilson suffered a fall which aggravated his condition and caused his back to hurt continuously. He continued to work for several weeks after the injury. Near the end of October, he awoke one morning with severe back pain and was unable to move. On October 25, 1978, he sought help from the Orthopaedic and Fracture Clinic in Mankato, Minnesota. Dr. P.H. Gislason examined Wilson, describing him at that time as "markedly disabled." Record at 219.

On November 10, 1978, Wilson underwent a laminectomy[1] with excision of a herniated nucleus pulposus. He has been unemployed since that time. After his surgery, Wilson was relieved of back pain for approximately four to six weeks. From January 9, 1979, through January 26, 1979, Wilson received outpatient therapy from the Orthopaedic and Fracture Clinic. The report from that therapy indicates continuous leg and back pain. On March 20, 1979, Wilson sought help from the Pain Clinic at Immanuel–St. Joseph's Hospital in Mankato, where he had the surgery. On May 30, 1979, Dr. Paul Arnesen, a Board-certified orthopedic surgeon, examined Wilson and diagnosed him as suffering from post-laminectomy syndrome with evidence of continued nerve root compression. From June 4, 1979, to June 14, 1979, Wilson was hospitalized for therapy and a flexion body cast was applied.

---

** The HONORABLE HOWARD T. MARKEY, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. A laminectomy is a surgical operation in which the posterior arch of the vertebra, consisting of two laminae or plates, is cut away and removed. 1 J. Schmidt, *Attorney's Dictionary of Medicine* L–11 (1977).

On April 7, 1980, Dr. Arnesen concluded that the conservative treatment program administered to Wilson had produced unsatisfactory results and recommended a lumbo-sacral spine fusion. On June 13, 1980, Wilson underwent a second laminectomy and a spinal fusion. Wilson received further therapy throughout the summer of 1980. He was again hospitalized in March and August of 1981 for additional therapy. He has been hospitalized repeatedly since 1981 for evaluation and therapy related to his back pain.

In a letter dated July 19, 1984, Dr. Arnesen concluded that, "on the 31st of December 1978, [Wilson was] in the recovery period following a laminectomy, and was therefore disabled at that time. * * * [H]e has been on a continued disability since that date and has not been capable of working because of back complaints." Record at 268. On January 17, 1986, Dr. Arnesen again reviewed Wilson's record, noting that, after Wilson's laminectomy in November of 1978, "[h]e had relief of the pain for several weeks, only to have the pain and the disability recur." Record at 301. Dr. Arnesen concluded:

> According to this history, the patient was not capable of working from October 1978 to the date that I first saw him [May 30, 1979]. He was not capable of working at the time that I saw him. * * * On the basis of a review of this record it would be my opinion that the patient has not been physically capable of working at any sustained work effort since October of 1978.

Id.

Wilson underwent chemical dependency treatment in late 1979 and again in April and May of 1982. At the administrative hearing, Wilson testified that he used alcohol to relieve pain, at first sparingly but increasingly until he was consuming approximately a quart of whiskey per day. However, up to the Saturday before the hearing, he had maintained sobriety for nearly three years.

Wilson also testified about his pain. He stated that following his first surgery he spent approximately twelve of his thirteen waking hours in bed and continues to do so. The activities of walking and sitting are limited to short periods of time. He testified that, in late 1978 and early 1979, his pain was "very severe" and he has been experiencing steady pain since that time. With regard to activities, Wilson testified that he does occasional fishing and gardening, but he has not belonged to any clubs or organizations since 1978 when he was active in the Moose Club.

The vocational expert (VE) who testified at the hearing opined that, if Wilson's testimony regarding his pain and limitations was credible, then he would not be able to perform a significant number of jobs in the national economy. The VE also concluded, assuming Wilson's allegations of pain were not fully credible and he could engage in "light" work but would be unable to twist or stoop, that he would be capable of engaging in various occupations.

Based on the evidence presented at the hearing, the administrative law judge (ALJ) made the following relevant findings:

1. That the claimant last met the special earnings requirements of the Act relative to disability on December 31, 1978.

* * * * * *

5. That since the alleged onset date of disability, claimant has not actually engaged in "substantial gainful activity."

6. That the claimant has degenerative disc disease in the lumbar spine.

7. That on or before December 31, 1978, the claimant did not suffer from any alcohol dependency, depression, conversion reaction, chronic pain syndrome, or other mental impairment.

8. That claimant's impairment did not preclude him from performing sedentary work for any period of twelve continuous months at any time on or before December 31, 1978.

9. That claimant's nonexertional limitations which were present on or before December 31, 1978, were limited to his inability to perform rapid or repetitive twisting, stooping or crouching.

10. That claimant's allegations of incapacitating alcohol abuse on or before De-

cember 31, 1978, are not supported by the pattern of drinking described by the claimant at the hearing, the medical records, the Medical Advisor's testimony, other medical opinions, or other evidence of substantial, probative value.

11. That the record does not establish the existence of constant, severe intractable pain which would be incompatible with occupational activity on or before December 31, 1978.

12. That claimant is precluded from returning to any of the jobs which he has performed in the past.

13. That claimant's additional limitations which were present on or before December 31, 1978 and which are not of an exertional nature, would not have precluded him from engaging in a wide range of "sedentary," unskilled occupations which have been administratively noticed by the Secretary as existing in significant numbers in the national economy.

\* \* \* \* \* \*

15. That the claimant was not prevented from engaging in any "substantial gainful activity" commencing on or before December 31, 1978, the date the special earnings requirements were last met, for any continuous period of at least twelve months.

16. That the claimant was not under a "disability," as defined in the Social security Act, as amended, commencing at any time on or before December 31, 1978.

Record at 28–29. Based on these findings, the ALJ decided that Wilson was not entitled to disability benefits. Wilson appealed the Secretary's denial of benefits. Relying on the magistrate's report and recommendation, the district court granted the Secretary's motion for summary judgment.

## II. DISCUSSION

The magistrate recognized that the pertinent question is whether Wilson was disabled prior to December 31, 1978, and that the central issue in the case concerns the ALJ's treatment of Wilson's subjective complaints of pain. However, the magis-

trate improperly delineated the standard of review for Social Security cases, stating that "[j]udicial review of the final decision of the Secretary is limited to a determination of whether that decision is supported by substantial evidence" and then defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Bowen*, No. 4–87–491, Magistrate's Report and Recommendation at 5 (D.Minn. April 15, 1988).

██ We have recently reiterated that "the district court's review should be based on whether substantial evidence on the record as a whole supports the Secretary's decision," emphasizing that "[a] notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.' " *Jackson v. Bowen*, 873 F.2d 1111, 1113 (8th Cir.1989).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* (quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). While the magistrate paid lip service to the proper standard of review, *see* Report and Recommendation at 12, 13, 14, her report indicates that the review was based on the improper standard. The magistrate failed to take into account the weight of the evidence upon which the ALJ relied and to apply a balancing test to any contradicting evidence. After an independent and in-depth review of the record, we conclude that the ALJ was erroneous in his conclusion that Wilson was not disabled prior to December 31, 1978.

██ As noted, the central issue is whether Wilson's subjective complaints of back

and leg pain, and his corresponding physical limitations, are credible. The VE explicitly testified that, given Wilson's walking, standing, and sitting limitations coupled with the need to intersperse recumbency of an hour or so at a time, and considering Wilson's age, work history, education, medical history, and reading capacity, Wilson would not be able to perform a significant number of jobs in the national economy. Record at 121–22. The ALJ determined, however, that, although Wilson has had some degree of back pain since October of 1978, the pain limited only his abilities to twist, stoop, or crouch in the period of time prior to December 31, 1978. The ALJ concluded that Wilson's back pain was not of an "incapacitating degree" prior to the relevant date. After balancing the contradictory evidence of record with the weight of the evidence relied upon by the ALJ, we disagree with the ALJ's conclusion.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984), requires the ALJ to give full consideration to all the evidence relating to subjective complaints of pain, including the claimant's prior work record and observations by third parties and treating physicians relating to such matters as (1) daily activities, (2) duration, frequency, and intensity of pain, (3) precipitating and aggravating factors, (4) dosage, effectiveness, and side effects of medications, and (5) functional restrictions. Absence of objective medical evidence which supports the degree of severity of such complaints is also a factor to be considered by the ALJ. *Id.*

The ALJ's analysis of Wilson's subjective complaints of pain rested on three evidentiary items: (1) Wilson's testimony that he was largely pain free in the four to six weeks following surgery; (2) Wilson's testimony that he is able to perform some household tasks, to fish, to do a small amount of gardening, and to visit friends; and (3) the indication in medical notes of the months following surgery that Wilson's pain was "intermittent." After giving full consideration to the evidence surrounding these matters, we disagree with the ALJ's conclusion that they are indicative of incredibility.

First, the ALJ noted that Wilson's pain subsided for four to six weeks following the November 10 surgery, until sometime in early to mid-December. This finding is consistent with Wilson's claim of severe pain commencing before December 31, 1978. However, the ALJ placed virtually no weight on the report corresponding with Wilson's outpatient therapy on January 9, 1979, which indicated that Wilson was suffering from continuous leg and back pain that interfered with his sleep at night. This report was made soon after the relevant date, and the word "continuous" indicates that the pain had been occurring for some time. At this point in time, Wilson must have presumed that the surgery was successful and that he would be returning to work. Indeed, the record shows that he was a hard worker who had worked long hours in the past. There was no reason at that time for Wilson to fabricate his claims of severe and continuous pain. Furthermore, within two months after this treatment, Wilson again sought relief from his pain through the hospital's Pain Clinic.

The ALJ also relied on Wilson's testimony of his daily activities to support a finding of incredibility. While some fishing and gardening, along with basic household chores and socializing with friends, may provide a basis for disbelieving a Social Security claimant in certain cases, we find it more persuasive to look at the whole record and determine the claimant's change in activity. Here, prior to October of 1978, Wilson was actively involved in the Moose Club, hunted, played tennis, and golfed. Comparatively, his daily activities following surgery and up through the present time appear to be substantially restricted, especially for a man of his age.

Third, the ALJ's reference to the term "intermittent" as descriptive of Wilson's pain in the months following surgery can be found in a hospital report dated February 17, 1982, over three years after the

first surgery.[2] In comparison, an overwhelming amount of the evidence indicates that, beginning sometime in October of 1978, Wilson has suffered from a degenerative disc disease causing him severe and continuous pain, except perhaps for short periods of relief following numerous surgeries and treatments. Dr. James A. Halikas, a neutral medical advisor, testified at the hearing that a reasonable correlation exists between Wilson's complaints of pain and the objective medical evidence. Record at 120.

In addition, the ALJ's analysis of Wilson's subjective complaints did not consider all of the relevant factors. The ALJ failed to consider the intensity and duration of Wilson's pain, his past work record, the objective medical evidence and its correlation to Wilson's pain and limitations, his use of medication and other attempts to get relief from the pain, and the opinions of Wilson's treating physician, Dr. Arnesen. We have carefully considered each of these shortcomings in the ALJ's analysis and conclude that Wilson's testimony carries the indicia of credibility.

The ALJ's decision indicates that, following the surgery, Wilson was prescribed Percodan and narcotic injections for pain, yet the ALJ does not discuss this use of medication in his analysis of Wilson's credibility. In addition, Wilson explicitly stated that he used alcohol to relieve pain. Although we agree with the ALJ's conclusion that the evidence does not support a finding of incapacitating alcohol abuse prior to December 31, 1978, the record does show that Wilson's alcohol consumption following surgery was minimal but increased steadily through the succeeding months. This evidence further supports Wilson's testimony that, though his pain was relieved for a few weeks following surgery,

the pain recurred soon afterwards and continued into the spring of 1979.

The ALJ placed little weight on the medical evidence dated after December 31, 1978. However, "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir.1984) (citations omitted). The evidence on the record as a whole, including medical reports dated post–1978, are highly relevant to the severity of Wilson's condition and indicate a serious, incessant medical condition.

Furthermore, Wilson's treating physician, Dr. Arnesen, concluded on several occasions that Wilson had severe pain which disabled him from productive work. In this circuit, the ALJ is required "to give substantial weight to the treating physician's opinion in the evaluation process." *Turpin v. Bowen,* 813 F.2d 165, 170 (8th Cir.1987) (citations omitted). *See also Griffon v. Bowen,* 856 F.2d 1150, 1154 (8th Cir.1988) (citing, as support for reversal of the ALJ's decision, the ALJ's failure to give any weight to the statement of claimant's treating physician, which described the claimant as "unable to perform any regular occupation"); *Piercy v. Bowen,* 835 F.2d 190, 191–92 (8th Cir.1987) (reversing because the ALJ failed to give adequate weight to the report of the treating physician).

In sum, after looking at the entire record and weighing the contradictory evidence, we hold that the ALJ's findings that Wilson was not disabled and not prevented from engaging in substantial gainful activity on December 31, 1978, were not based on substantial evidence on the record as a whole. The record indicates that Wilson

**2.** The hospital report reads in part:
 [Wilson] at one time had a laminectomy and excision of protruding intervertebral disc. He has since that time had *continuous* and intermittent complaints of pain in the low back with radiation into the lower extremity. The patient has intermittent periods when he has severe pain that prevents him from carrying out any type of physical activity.

Record at 251 (emphasis added). We interpret this language to mean that Wilson was in continuous pain, with intermittent periods in which the pain became so severe that he was unable to even walk. This is consistent with his testimony that, at times, he fishes, gardens, etc., but on the whole he must remain recumbent for most of the day.

suffers from a degenerative disc disease which causes him severe and constant pain and which has not yet been successfully treated. This disease commenced sometime in October of 1978, so he immediately sought treatment. The surgery in November, like later treatments and surgeries, relieved his pain for a short time but as a whole was unsuccessful, and Wilson's condition has continued to affect him for the past ten years. Although the ALJ concluded that Wilson's testimony as to his pain and limitations was not fully credible, we disagree. Contradictory evidence supporting Wilson's credibility abounds.

The VE concluded that if Wilson's testimony as to his nonexertional limitations was credible, then he could not perform any substantial gainful activity. Therefore, we remand to the district court with directions to remand to the Secretary for the computation and award of benefits.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the district court and remand with instructions.