# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3964

———————

| | | |
|---|---|---|
| Larry D. Choate, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jo Anne B. Barnhart, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Appellee. | * | |

———————

Submitted: April 21, 2006
Filed: August 11, 2006

———————

Before ARNOLD, COLLOTON, Circuit Judges, and BOGUE,[1] District Judge.

———————

COLLOTON, Circuit Judge.

Larry Choate applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. An administrative law judge ("ALJ") denied the application for benefits, finding that Choate is not disabled because he has sufficient residual function capacity to perform a significant

———————

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

number of jobs in the national economy. The Appeals Council denied review, and the district court[2] upheld the decision of the Commissioner. We affirm.

I.

On November 18, 2000, Choate went to an emergency room with chest pain, was diagnosed with non-Q-wave myocardial infarction, chronic obstructive pulmonary disease/asthma, hypertension, and substance abuse, and underwent an angioplasty. He filed an application for disability insurance benefits and supplemental social security income on August 1, 2001, claiming that he has been disabled since November 18, 2000, due to heart disease, asthma, and emphysema. On August 14 and November 16, 2001, Choate filed claimant questionnaires, describing worsening breathing problems and chest pain. Choate has undergone multiple angioplasties with stent placements and several coronary angiographies. He claims his conditions prevent him from performing his prior work as a laborer. He has worked inconsistently as a landscaper, plumber's assistant, construction laborer, dishwasher, and maintenance worker.

On January 8, 2002, Dr. Vincent Previt completed a residual function capacity assessment based on a review of Choate's medical records. From his diagnosis of chronic obstructive pulmonary disease ("COPD"), hypertension, coronary artery disease, and stents, Dr. Pevit found that Choate could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk at least two hours in an eight-hour workday, and sit for six hours in a workday. He also recommended that Choate avoid exposure to temperature extremes, fumes and dusts, and hazards. Although he stated that Choate's allegations of chest pain and difficulty breathing are "partially credible," he

_____

[2]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

also noted that Choate's treating physician advised regular aerobic exercise, which Dr. Pevit considered in his recommendation. (R. at 201).

Two treating physicians provided information supporting Choate's claims of disability due to his cardiac condition: Dr. Aaron Trone, who was Choate's primary care physician from February 19, 2003, to July 3, 2003, and Dr. Paul Freiman, who was Choate's treating cardiologist from June 21, 2002, through August 17, 2003. Dr. Trone completed a medical source statement on May 16, 2003, in which he opined that Choate could walk a total of two hours in an eight-hour workday, but only for ten minutes continuously, and that he could sit for four hours in a workday, but only for one hour continuously. Dr. Trone stated that Choate could lift ten pounds and that his work environment should have limited humidity, temperature extremes, dust, and fumes. Dr. Trone based these findings on Choate's history of angioplasties with stent placements, back and neck pain with somatic dysfunction, mild COPD, and a CT scan showing degenerative disc disease of his lumbar spine. (R. at 215-17).

Dr. Trone also submitted a letter dated August 18, 2003, listing Choate's conditions as severe coronary artery disease requiring stent placement on multiple occasions, chronic muskuloskeletal pain syndrome, hypertension, and chronic obstructive airway disease. He concluded that these conditions "prevent [Choate] from doing hard labor including bending, stooping, lifting or walking for extended periods of time," and added that "[d]oing so, in fact, could be life threatening due to his coronary artery disease." (R. at 300).

Dr. Freiman provided an opinion dated August 12, 2003, in which he stated that he had been treating Choate for atherosclerotic heart disease and previous coronary artery intervention. He noted that angiographies "have shown nonobstructive coronary artery disease and it has been felt that coronary artery spasm has played a significant role in this patient's symptomatology." (R. at 298). Dr. Freiman concluded that Choate has "symptoms of chest pain daily, exacerbated by

physical exertion and associated with shortness of breath," and therefore "is disabled from a cardiac standpoint and in my opinion, is eligible for assistance due to medical disability." (*Id.*).

Choate also was treated for shortness of breath by pulmonologist Dr. James Coulter from June 13, 2002, through February 12, 2003. Dr. Coulter diagnosed him with chronic bronchitis secondary to long-standing tobacco abuse. In a narrative written on June 26, 2003, Dr. Coulter stated that Choate's oxygen levels have been at 98%, which is within the normal range. She also concluded that his Wright Peak Flow, a measurement of the point of the highest flow rate of air expelled from the lungs used to check airway impairment or the status of the lungs, *see* J.E. Schmidt, *Attorneys' Dictionary of Medicine*, at W-38, P-114 (2005), was 350, a level that does not meet the requirements for disability. (R. at 237). Dr. Coulter further stated that when Choate stops smoking and takes his medications regularly, a physical examination of his lungs is normal and there is no indication of wheezing or rhonchi.

Choate testified at an administrative hearing that the major difficulty preventing him from working was his breathing, which could trigger chest pain. He stated that prior to his stent repair, he had chest pain once a week, but that the procedure helped his condition. He said he takes muscle relaxers and nitroglycerin, and uses an inhaler and nebulizer. Choate also testified that he could walk a quarter or a half of a mile without stopping, stand for 30 to 45 minutes, sit for one to two hours, and lift 50 pounds, but that he needed to rest for 45 minutes to an hour routinely each day.

A vocational expert also testified at the hearing. He was asked to consider an individual with Choate's age, education and work experience, who could occasionally lift or move twenty pounds and frequently lift or move ten pounds, could stand for two hours and sit for six hours in a workday, and occasionally climb stairs, but who must avoid moderate exposure to fumes, dust, gas, and poor ventilation and

concentrated exposure to cold or heat. The vocational expert opined that such an individual could perform a job as a cashier, security guard, or receptions information clerk. The expert testified that there are 1,000 cashier, 500 security, and 400 receptionist jobs in the Ozark region, 32,800 cashier, 10,936 security, and 12,140 receptionist jobs in Missouri, and 1.2 million cashier, 404,632 security, and 449,180 receptionist jobs in the United States. (R. at 413-17).

Based on this record, the ALJ determined that the "clinical and objective findings herein are inconsistent with allegations of total debilitation," (R. at 23), and that Choate's impairments were credible only "to the extent they indicate an ability to engage in activity exceeding the residual functional capacity set forth below." (R. at 24). The ALJ found that Choate had the residual functional capacity to lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours and sit six hours in a workday. He also determined that Choate could occasionally climb, balance, stoop, kneel, crouch, and crawl, and should avoid moderate exposure to fumes, odors, dusts, gases and poor ventilation, and avoid concentrated exposure to extreme heat and cold. He concluded that Choate could no longer perform his previous jobs, but "[b]ased on an exertional capacity for light work and the claimant's age, education and work experience," (R. at 27), found that he was not disabled. The ALJ determined that despite limitations preventing Choate from performing the full range of light work, there are still a significant number of jobs he can perform that are available in the national economy.

II.

We review *de novo* the district court's decision upholding the denial of benefits, and affirm if substantial evidence on the record as a whole supports the outcome. *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005). Substantial evidence is evidence that a reasonable mind would find adequate to support the decision of the Commissioner. *Id.*

The ALJ applied the appropriate five-step test to determine whether Choate was disabled: 1) whether the claimant is currently employed, 2) whether the claimant is severely impaired, 3) whether the impairment is, or is comparable to, a listed impairment, 4) whether the claimant can perform past relevant work, and if not, 5) whether the claimant can perform any other kind of work. *Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003). The ALJ found that Choate was not fully credible and determined at the fifth step of the analysis that Choate was not disabled.

A.

On appeal, Choate argues that the ALJ erred in failing to give controlling weight to the opinions of the treating physicians, Dr. Trone and Dr. Freiman. A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (internal quotations omitted).

The ALJ declined to give controlling weight to Dr. Trone's opinion on the length of time Choate can sit or stand or to Dr. Freiman's opinion that Choate is disabled. The ALJ determined that Choate is limited to walking or sitting for six hours in an eight-hour workday and can perform light work only in well-ventilated environments without extreme temperatures or fumes, odors, gases, and dusts. (R. at 27). These are significant limitations, demonstrating that the ALJ gave some credit

to the opinions of the treating physicians where the opinions were supported by the objective medical evidence. *See Ellis*, 392 F.3d at 994.

In assessing the weight to give Dr. Freiman's letter dated August 13, 2003, the ALJ stated that he was discounting the opinion "[o]n the basis of objective inconsistencies with subjective complaints." (R. at 23). He noted that although the letter claims that Choate is "disabled from a cardiac standpoint," (R. at 298), an exercise stress echocardiogram performed on March 12, 2003, was "negative for ischemia with exercise to a moderate workload," and after registering some mild impairment, showed "no other clinically significant cardiac structural or function abnormalities." (R. at 205). Although Choate was admitted to the hospital on July 10, 2003, complaining of chest pain and shortness of breath, an electrocardiogram was within normal limits and his cardiac enzymes were negative. A coronary angiography performed the next day showed that all previous stent sites were widely patent, there were no areas of obstructive coronary artery disease, the overall left ventricular systolic function was normal, and the left main coronary artery and the left anterior descending coronary artery were free of significant obstruction, although there was a 50% lesion in the mid portion of the right coronary artery and a lesion of 40-50% in the proximal circumflex. (R. at 338).

Despite the results of these objective tests, Dr. Freiman concluded that based on his symptoms of chest pain, Choate is disabled due to his cardiac conditions. Dr. Freiman failed to explain why Choate could not perform a light or sedentary job. There is no indication in the treatment notes that either Dr. Freiman or any of Choate's other doctors restricted his activities, or advised him to avoid prolonged standing or sitting. *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Indeed, another doctor directed Choate to engage in regular aerobic exercise. (R. at 195). The legal determination that an applicant is "disabled" is for the Commissioner, *Ellis*, 392 F.3d at 994, and the ALJ was permitted to disregard Dr. Freiman's conclusory

statement, unsupported by the objective medical evidence, that Choate is disabled. *See id.* at 995; *Charles v. Barnhart*, 375 F.3d 777, 784 (8th Cir. 2004).

The ALJ also discounted Dr. Trone's medical source statement and narrative opinion regarding Choate's limited physical ability on the grounds that they were internally inconsistent and unsupported by the record. (R. at 23, 25). In his medical source statement, Dr. Trone opined that Choate must rest for ten to fifteen minutes every hour and is limited to sitting for a total of only four hours in a workday, standing for ten minutes at a time, and lifting ten pounds. (R. at 215-217). Dr. Trone's treatment notes, however, make no mention of any suggested restrictions on Choate's ability to sit or stand for any length of time. *See Ellis*, 392 F.3d at 995. In contrast to the medical source statement, Choate testified that he could walk for a quarter or a half of a mile without rest, stand for 30 to 45 minutes, and lift up to 50 pounds. He said that he needed to rest for only 45 minutes to an hour daily. (R. at 399-400).

Additionally, Dr. Trone's narrative opinion, dated August 18, 2003, merely states that Choate's conditions "prevent him from doing hard labor including bending, stooping, lifting or walking for extended periods of time." (R. at 300). Although Dr. Trone suggests that for Choate, performing hard labor could be "life threatening due to his coronary artery disease," he makes no mention of any limitations on Choate's ability to sit or perform sedentary tasks, and suggests a limitation on walking only for "extended" intervals, which conflicts with the more drastic limitations he suggests in his medical source statement. Given the inconsistencies between Dr. Trone's letter and medical source statement, as well as the lack of supporting objective evidence, the ALJ did not err in discounting Dr. Trone's opinion. *See Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993).

B.

Choate also argues that the ALJ did not properly assess Choate's credibility according to *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In evaluating a claimant's subjective reports of pain, the ALJ should make a credibility determination taking into account: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *Id.*

The ALJ explicitly found that Choate was not fully credible under the *Polaski* factors. He determined that based on the absence of objective medical evidence and inconsistencies between Choate's testimony and the record, "the claimant has functional limitations, but that the claimant's statements concerning his impairments and their impact on the ability to work are credible only to the extent they indicate an inability to engage in activity exceeding the residual functional capacity set forth below." (R. at 24). The ALJ concluded that "the testimony describing totally incapacitating subjective complaints and medically imposed limitations of function is unsupported by the totality of the medical and other evidence of record." (*Id.*).

We uphold an ALJ's credibility findings, so long as they are adequately explained and supported. *Ellis*, 392 F.3d at 996. As the ALJ discussed, Choate's work history prior to the alleged onset of disability was sporadic. (R. at 71, 52-55). Choate's self-reported limitations on his daily activities are inconsistent with his testimony at the hearing and with the medical record. Although Choate claimed in his claimant questionnaire that he had difficulty even walking to the mailbox and feeding his pets, (R. at 91-92), he testified at the hearing that he could walk a quarter

or a half of a mile and lift 50 pounds. (R. at 399-400). The record indicates that he worked for a week during September 2001, was hit by a "garden back hoe bucket" while "at work" on March 19, 2001, cut his grass in October 2002, and was shoveling snow in the winter of 2003. (*Id.* at 106, 157, 225, 228). As the ALJ found, these inconsistencies indicate that Choate's daily activities "have, at least at times, been somewhat greater than the claimant has generally reported." (R. at 21); *see Riggins v. Apfel*, 177 F.3d 689, 692-93 (8th Cir. 1999).

The ALJ also found that Choate's allegations of pain are inconsistent with the medical record. A stress exercise echocardiogram conducted in March 2003 was negative for ischemia with exercise at a moderate workload, (R. at 205), an angiography performed in July 2003 showed that previous stent sites were widely patent, (R. at 338), and, when Choate took his medications and stopped smoking, he had a normal lung examination. (R. at 237).

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001), including failing to take prescription medications, *Riggins*, 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir. 1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). Choate frequently failed to show up for tests and examinations and often did not take prescribed medications. (R. at 183, 184, 223, 241, 380-81, 257). One doctor eventually informed him that he would need to find another provider because he did not comply with treatment directions and failed to keep his appointments. (R. at 195, 257). He was advised repeatedly to stop smoking, but admitted at the hearing that he was still smoking. (R. at 390). The record shows that the ALJ properly applied the *Polaski* factors and discounted Choate's subjective complaints of pain based on Choate's behavior and other inconsistencies in the evidence as a whole. *See Wheeler*, 224 F.3d 891, 895-96 (8th Cir. 2000).

Choate also argues that the ALJ failed to "satisfy Eighth Circuit law requiring specificity" when rejecting his wife's testimony. (Appellant's Br. at 48). Corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case. *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988). Here, the ALJ considered the testimony of Choate's wife and properly found that it was similar to Choate's and added little information, particularly in light of her interest in the outcome. This was a permissible finding. *See Wheeler*, 224 F.3d at 896.

The ALJ's decision was supported by substantial evidence on the record as a whole. The judgment of the district court is affirmed.

_____