FILED
United States Court of Appeals
Tenth Circuit

February 4, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

KENDRA COBB,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      Defendant-Appellee.

No. 09-3079
(D.C. No. 5:07-CV-04119-JAR)
(D. Kan.)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

---

Kendra Cobb appeals from a district court judgment affirming a decision by

the Commissioner of Social Security to deny her applications for disability

insurance benefits (DIB) and supplemental security income (SSI). Ms. Cobb

raises two issues regarding an administrative law judge's (ALJ) credibility

finding: (1) that the ALJ failed to specify which parts of her testimony he

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

credited and which parts he rejected and (2) the ALJ applied an erroneous legal standard evidenced when he stated that Ms. Cobb's ability to perform activities of daily living (ADLs) "*to any degree* suggests that she retains some capacity to perform activities such as sitting, standing, walking and functioning in a work environment," Admin R. at 29 (emphasis added). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## Background[1]

Ms. Cobb was 38 years old at the time of the Commissioner's decision. She completed high school, attended two years of college, and has past relevant work experience as a sales clerk, general clerk, cashier-checker, and book sorter. Ms. Cobb claimed disability stemming from injuries sustained in a single-car rollover accident in December 2002 in which she fractured a number of spinal discs and two ribs, including a compression fracture at the T3 level accompanied by mild kyphosis, or hunchback. She was discharged from the hospital after several days, agreeing with a neurologist's nonsurgical option that she spend six weeks in a cervical collar and three months in a back brace. She was prescribed Flexeril, Motrin, and Lortab. In April 2003, she attended four sessions of physical therapy and showed improvement, reporting that she felt remarkably

---

[1] Because the issues in this appeal are confined to the ALJ's credibility finding, our summary of the medical evidence excludes that to which the ALJ gave no weight.

-2-

better and was able to walk a mile, but she elected to forego any further sessions because of her improvement and for financial reasons.

Thereafter, she was seen sporadically through December 2005 by a variety of doctors. She tried acupuncture with poor results. X-rays and MRIs generally showed a moderately severe compression fracture at the T3 level accompanied by accentuated kyphosis without spinal cord abnormalities. Exams indicated good range of motion (ROM), except in her cervical spine and neck, with some pain on thoracic extension and flexion; normal reflexes; and good strength in all extremities. She generally presented without signs of distress and moved about the examining room and table easily. Surgery was discussed but largely ruled out. A one-time epidural steroid injection in the T3-4 region was considered to provide temporary relief, but there is no indication in the record that Ms. Cobb ever received one. A permanent 25-pound limitation on lifting was considered reasonable, and she was advised to avoid stooping. She treated pain with ibuprofen. One physician considered her to be at maximum medical improvement in June 2004. A Physical Residual Functional Capacity Assessment form completed by nonexamining state agency physicians in August 2004 indicated that Ms. Cobb could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for about 6 hours in an 8-hour workday; could

sit for about 6 hours in an 8-hour workday; and should not perform work above her head due to limitations on reaching.

Meanwhile, in March 2004, Ms. Cobb filed her benefits applications and completed a form describing her ADLs dated April 15, 2004. She reported sleeping 8 hours a night, taking Tylenol P.M. on occasion and ibuprofen for pain. She stated she spent between 30 and 60 minutes cooking meals 10-12 times a week; 10-15 minutes doing a load of laundry 5 times a week; 1-2 hours cleaning the house; 1-2 hours paying bills; 2 hours a week grocery shopping; 2-3 hours a night watching television; 2-3 hours a week reading; 7-14 hours a week using a computer; 1 hour a week attending church; 1 hour a week visiting with friends and relatives; and up to 1.5 hours a week dining out, seeing movies, or attending medical appointments. She wrote: "Don't do much lifting. Hurt a lot when standing or walking for any length of time. Hurt when cooking [and] doing dishes for any length of time. Hurt when doing paperwork any length of time." Admin. R. at 144.

In December 2005, Ms. Cobb had the first of two hearings before the ALJ. She testified that she had a lot of nerve problems, numbness, and tingling, and a lot of pain if she uses her arms or bends or twists for any length of time. She stated that if she were to lift 5 or 10 pounds for 2 or 3 minutes, her pain level would be a 5 or 6 on a 10-point scale with a lot of tingling. Depending on the

pain level when she stopped lifting the weight, she would have to wait anywhere from 10 to 60 minutes before being able to resume, and then would have to stop and rest again after a matter of minutes. She testified that she experienced tingling and burning, presumably in her upper back, when standing in a fixed position for 10 or 15 minutes or when walking any length of time, but she estimated she could walk for up to an hour. She admitted being able to sit for about 6 hours in an 8-hour day in a high-backed chair. Regarding her ADLs, she testified that she vacuums or dusts once a week and cooks, but cooking for a 30-60 minute period triggers severe upper-back cramps. She went grocery shopping once or twice a week but leans on the cart for support and can only shop for an hour before needing a break. If she pushes herself too hard one day, she needs the next day to rest and recover.

At the conclusion of the hearing, the ALJ referred Ms. Cobb for an additional consultative examination, which was performed in February 2006 by Dr. James Shafer, who had examined her in June 2004. As in the previous exam, Dr. Shafer noted that she was in no apparent distress, had normal gait and station, and moved easily in the examining room without any assistive device. She had good ROM in her back and neck, and Dr. Shafer could detect no weakness. He completed a medical source statement, finding that she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand about 6 hours in an

8-hour workday; sit about 6 hours in an 8-hour workday; and push and pull no more than 40-50 pounds with her arms. He limited her to only occasional climbing.

In July 2006, Ms. Cobb saw Dr. Raymond Grundmeyer for a neurological evaluation. She reported her pain at level 3 and explained that her pain increases with activity and improves with counter-pressure and heat. She described difficulty sleeping and was taking ibuprofen for pain. On exam, Dr. Grundmeyer found her cranial nerves intact. Motor exam revealed 5/5 in upper and lower extremities bilaterally. Her reflexes were +2 in all extremities, her gait was normal, and she was able to heel-toe walk without difficulty. Her straight-leg raise and Romberg tests were negative. She had limited range of motion in her cervical spine. Dr. Grundmeyer reviewed an MRI from November 2005 and recommended further radiological studies in order to determine whether she might benefit from thoracic fusion and instrumentation.

On August 15, 2006, the ALJ held a second hearing. Ms. Cobb testified that her condition had stayed about the same since the first hearing, and that she recently had the MRI that Dr. Grundmeyer recommended and was awaiting a report. The ALJ took the testimony of a vocational expert (VE). In response to a number of hypothetical questions limiting a claimant to light work with an

assortment of postural and manipulative limitations, the VE identified a number of jobs Ms. Cobb could perform, including some of her past work.

In a written decision, the ALJ found that Ms. Cobb had not engaged in substantial gainful activity since her alleged onset date and that her T3 fracture was a severe impairment but did not meet or medically equal the criteria for a presumptively disabling impairment, *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Moving to step 4 of the 5-step sequential process used to evaluate DIB and SSI claims, *see Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (describing the process), the ALJ found that Ms. Cobb had the RFC to perform light work, specifically that she could lift/carry 20 pounds occasionally and 10 pounds frequently, and she could sit 6 hours and stand or walk 6 hours in an 8-hour workday. But she could do no continuous reaching, including overhead; was limited to occasional climbing, but never on ladders, ropes, or scaffolds; and her ability to push/pull was limited to 40-50 pounds. In reaching this RFC finding, the ALJ adopted the RFC findings of the state-agency medical consultants as well as Dr. Shafer's climbing and push/pull limitations.

The ALJ also found Ms. Cobb's statements regarding the intensity, persistence, and limiting effects of her symptoms "not entirely credible." Admin. R. at 25. The ALJ stated that her ability to perform ADLs "*to any degree suggests that she retains some capacity to perform activities such as sitting,*

standing, walking and functioning in a work environment." *Id.* at 29 (emphasis added). The ALJ further found that Ms. Cobb's statements regarding the severity of her pain were inconsistent with the objective medical evidence and observed that she "sat through two hearings with no pain behavior observed such as no unusual posturing or stiffness, no apparent difficulty turning her head and she walked in and out of the room normally." *Id.* The ALJ concluded that Ms. Cobb could perform her past relevant work as it is performed in the national economy. In the alternative, the ALJ found that she had transferable skills enabling her to perform other work that exists in significant numbers in the national economy and therefore was not disabled under the framework of Medical-Vocational Rule 202.22.

After the Appeals Council affirmed the ALJ's decision, Ms. Cobb appealed to the district court. A magistrate judge recommended that the case be reversed because the ALJ's observation that Ms. Cobb's performance of ADLs "to any degree," *id.*, was not a valid basis for finding her not fully credible and because the ALJ failed to explain what parts of her testimony he found not credible. The Commissioner filed objections, which the district court sustained, thereby affirming the Commissioner's decision in its entirety. This appeal followed.

## Discussion

-8-

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration, quotations, and citation omitted).

On appeal, Ms. Cobb first argues that the ALJ erred in failing to specify which parts of her testimony he did not fully credit. We reject this argument. An ALJ generally is required to explain what parts of a claimant's testimony he does not accept and why. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). The district court reasoned that despite the ALJ's failure to explicitly specify which portions of Ms. Cobb's testimony he found "not entirely credible," Admin. R. at 25, it was apparent from the decision read as a whole—the ALJ did not fully credit her assertion that her pain precluded her from standing and walking for "any length of time," *id.* at 144, 377, or her hearing testimony that she could stand for only 10-15 minutes at a time, but the ALJ did accept her claim that she could sit for 6 hours in a high-backed chair.

This reading is supported by the fact that the ALJ relied on the finding of the state-agency medical consultants that Ms. Cobb could stand and/or walk for 6 hours in an 8-hour day and by the ALJ's observations of Ms. Cobb's lack of distress at her hearings. Also, as the district court noted, the ALJ observed that in April 2003, she reported walking one mile, and that in June 2004, just two months after completing her ADL report stating that she "[h]urt a lot" when standing and walking for "any length of time," *id.*, she told Dr. Shafer that she could walk 30-60 minutes at a time. The court also pointed to the ALJ's discussion of Dr. Shafer's objective findings in June 2004 and February 2006, which were generally benign except for Ms. Cobb's claim of upper back pain. Thus, we agree with the district court that the ALJ's credibility finding was summary, but taking the decision as a whole, it is clear enough what portions of Ms. Cobb's testimony he credited and what portions he did not, and why, without "violating the general rule against post hoc justification of administrative action recognized in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)," *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

We next consider Ms. Cobb's second argument, that the ALJ applied an erroneous legal standard when stating that Ms. Cobb's ability to perform ADLs "*to any degree* suggests that she retains some capacity to perform activities such as sitting, standing, walking and functioning in a work environment," Admin. R.

at 29 (emphasis added).  Minimal or sporadic performance of ADLs (i.e., performing ADLs "to any degree") are generally insufficient to support an adverse credibility finding.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  But the district court calculated that Ms. Cobb's self-reported ADLs consisted of 31-54 hours per week of activities primarily performed seated, and 7-14 hours per week of activities primarily performed standing.  The extent of Ms. Cobb's ADLs set this case apart from *Thompson* and the other cases she relies on, where minimal or sporadic performance of ADLs was held to be an insufficient basis for an adverse credibility finding.  *See Reed v. Barnhart*, 399 F.3d 917, 919, 923 (8th Cir. 2005) (limited ability to do crafts, household chores, and grocery shopping); *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (television watching); *Thompson*, 987 F.2d at 1489-90 (minimal ADLs such as visiting neighbors and doing light housework).  Moreover, the ALJ did not state that Ms. Cobb's performance of ADLs "to any degree" meant that she had the RFC "to do sustained work activities in an ordinary work setting on a regular and continuing basis," which generally "means 8 hours a day, for 5 days a week, or an equivalent work schedule," Social Security Ruling 96-8p, 1996 WL 374184, at *2 (1996).  The ALJ simply found that her ability to perform ADLs "to any degree suggests . . . *some* capacity" to function in a work environment.  Admin. R. at 29 (emphasis added).  As such, we consider the statement relatively

benign. Accordingly, we do not think that the ALJ's use of the phrase "to any degree" suggests that the ALJ applied an erroneous legal standard when determining whether Ms. Cobb's ADLs undermined the credibility of her claimed limitations.

For the foregoing reasons, we conclude that substantial evidence supports the ALJ's credibility finding and that the ALJ applied the correct legal standards. The judgment of the district court is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge